IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| JS & RB, INC., ) | |
| ) | Case No. 08-41902 |
| Debtor. ) | Chapter 7 |
| _____ ) | |
| ) | |
| GARY D. BARNES, Trustee, ) | Adversary No. 10-04144-drd |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| KARBANK HOLDINGS, LLC, ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION ON MOTION AND CROSS-MOTION
FOR SUMMARY JUDGMENT**

This adversary comes before the Court on the motion for summary judgment filed by the Trustee in Bankruptcy, Gary D. Barnes ("Plaintiff" or "Trustee") against defendant Karbank Holdings, LLC ("Karbank") and Karbank's cross-motion for summary judgment. The Trustee asserts entitlement to judgment as a matter of law based on the theory that Karbank received preferential transfers from JS & RB, Inc. ("Debtor") pursuant to 11 U.S.C. § 547(b) which may be avoided. Karbank asserts affirmative defenses under 11 U.S.C. §§ 547(c)(1) and (c)(2) and argues that it is entitled to attorney's fees under the common fund doctrine. This is a core proceeding under 28 U.S.C. §157(b)(2)(B)(E) and (F) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

For the reasons set forth below, the Court finds that the Trustee established that each of the three transfers described in the Complaint to Avoid and Recover Preferential Transfers, Recovery of Transferred Funds, Disallowance of Claims and for Delivery and Turnover of Property of the Estate

("Complaint") are avoidable as preferences under § 547(b). The Court, however, denies the Trustee's request for turnover of the February 25, 2008 transfer, as it finds that Karbank is entitled to retain this payment as a contemporaneous exchange for new value under § 547(c)(1). As to the two transfers made in March 2008, the Court finds that because there exist genuine issues of material fact related to the affirmative defenses asserted by Karbank under § 547(c)(1) and § 547(c)(2), these issues will be set for trial. The Court further finds that Karbank is not entitled to summary judgment on the question of whether its attorney's fees should be paid under the common fund doctrine, as there remain genuine issues of material fact which will be determined at trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to the Court's determination as to whether preferential transfers were made are materially uncontested. Karbank owns certain real property located at 1650-1690 North Topping, Kansas City, Missouri (the "Property"). Debtor leased the Property from Karbank pursuant to the terms of a Commercial and Industrial Lease Agreement dated December 20, 2001, as modified by the Lease Modification Agreement dated February 16, 2007 (collectively, the "Lease").[1] The basic rental amount due pursuant to the Lease was $38,487.16 per month, due the first day of each month.

Debtor paid to Karbank the amount of $38,487.16 ("February Rent") by a check dated February 15, 2008. The check was given to Karbank on February 25, 2008 and it was posted and cleared by Debtor's bank on February 26, 2008.[2] Karbank sent Debtor a Notice of Default dated March 14, 2008, threatening to sue Debtor, terminate the Lease, and demanding that Debtor pay

---

[1] Trustee's Exhibit No. 5.

[2] Trustee's Exhibit No. 4, ¶ 11.

March rent and late fees as were due pursuant to the terms of the Lease.[3] Counsel for Karbank sent Debtor a second letter on March 20, 2008 demanding March rent and late fees.[4] On March 24, 2008, Karbank filed a Petition for Writ of Attachment and for Breach and Repudiation of Lease against Debtor in the Circuit Court of Jackson County, Missouri ("State Court Action").[5] A Writ of Attachment was issued March 24, 2008 in the State Court Action and served on Debtor on the same date.[6] Debtor and Karbank entered into a Stipulation and Agreement dated March 25, 2008 ("Stipulation"), which was filed in the State Court Action.[7] The pertinent terms of the Stipulation are outlined below.

Karbank received a payment from Debtor in the amount of $7,697.44, which was dated March 20 and cleared by Debtor's bank account on March 26, 2008. This payment represented late fees for February and March rent combined ("Late Fees Payment").[8] Debtor paid to Karbank the amount of $38,487.16 ("March Rent") by a check dated March 26, 2008. The March Rent was posted and cleared by Debtor's bank on March 27, 2008.[9] On March 25 and 26, 2008, Debtor conducted a liquidation sale of Debtor's personal property (the "Liquidation Sale"). Pursuant to the Stipulation, the net proceeds of the Liquidation Sale in the amount of $252,430.02 were paid into the registry of the Jackson County Court in connection with the State Court Action.

---

[3] Trustee's Exhibit No. 4, ¶ 16.

[4] Trustee's Exhibit No. 7.

[5] Trustee's Exhibit No. 8.

[6] Trustee's Exhibit No. 9.

[7] Trustee's Exhibit No. 12.

[8] Trustee's Exhibit No. 4, ¶ 21.

[9] Trustee's Exhibit No. 4, ¶ 22.

On May 14, 2008 ("Petition Date"), Universal Import, LLC, Paulus, LLC and Champion Brands, LLC filed an involuntary petition under Chapter 7 of the Bankruptcy Code against Debtor. On March 5, 2010, the Trustee made written demand on Karbank for the turnover of the full amount of the February Rent, the Late Fees Payment, and the March Rent.  On June 23, 2010, the Trustee filed the Complaint and thereafter the Trustee filed the current motion seeking summary judgment on the claims filed under 11 U.S.C. § 547(b) and recovery of the funds under 11 U.S.C. § 550. Karbank filed an amended answer wherein it asserted affirmative defenses pursuant to 11 U.S.C. §§ 547(c)(1) and (c)(2).  Karbank also filed a cross-motion for summary judgment asking for summary judgment against the Debtor's estate for $22,919.19 in attorney's fees and costs pursuant to the common fund doctrine and alleging entitlement to summary judgment on Counts I-III of the Complaint based on its asserted affirmative defenses.

## II.  LEGAL ANALYSIS

### A.  Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970).  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere

assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts'." *Id*. Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

### B.  11 U.S.C. § 547(b)

"Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Wells Fargo Home Mortgage, Inc.v. Lindquist*, 592 F.3d, 842 (8th Cir. 2010) *quoting Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (B.A.P. 8th Cir. 2000).

The Trustee has established that the February Rent, the Late Fees Payment and the March Rent each satisfy the elements of a preference under § 547(b). Karbank does not dispute in any

material manner that the three checks transferred to Karbank from Debtor within the 90 days prior to the Petition Date constitute preferential transfers under § 547(b). Karbank argues, however, that the three transfers should not be avoided by the Trustee either because they were a contemporaneous exchange for new value between the parties under § 547(c)(1) or because they were made in the ordinary course of business under § 547(c)(2).

### C. Contemporaneous Exchange for New Value under 11 U.S.C. § 547(c)(1)

Section 547(c)(1) provides that the trustee may not avoid an otherwise preferential transfer:

> (1) to the extent such transfer was-
>
> > (A) intended by the debtor and creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> >
> > (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1); *see also Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326-27 (8th Cir. 1997).

Whether the payment of rent due pursuant to an unexpired real property lease constitutes "new value" appears to be a question of first impression in this jurisdiction. However, other courts that have addressed this issue have held that "new value" is created by the debtor's right to continue a leasehold estate in exchange for the rental payment. *In re General Time Corp., GTC*, 328 B.R. 243, 246 (Bankr. N.D. Ga. 2005); *see also e.g.*, *Brown v. Morton (In re Workboats Northwest, Inc.)*, 201 B.R. 563 (Bankr W.D. Wash. 1996); *In re Coco,* 67 B.R. 365 (S.D. N.Y. 1986); *Armstrong v. General Growth Development Corp. (In re Clothes, Inc.)*, 35 B.R. 489, 491 (Bankr. N.D. 1983); *Carmack v. Zell (In re Mindy's Inc.),* 17 B.R. 177, 178-9 (Bankr. S.D. Ohio

1982).  The facts in *General Time* are similar to those here, at least with regard to the February Rent.  *General Time* involved a landlord/tenant situation in which the tenant failed to make the June rent payment, which was due pursuant to the lease on the first of the month, until the 29th day of the month.  *General Time*, 328 B.R. at 245.  After the bankruptcy petition was filed, the plaintiff filed an adversary to recover the June rent as a preference and the landlord argued that although a *prima facie* case under § 547(b) had been established, it was entitled to summary judgment based on the affirmative defense of a contemporaneous exchange of new value under § 547(c)(1).  *Id*.  The *General Time* Court first considered the Bankruptcy Code's definition of "new value" which is:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).  The landlord argued that the transfer on June 29th constituted  "new value" because the payment of the June rent, albeit 28 days late, was made in exchange for the landlord forbearing its right to pursue possession of the premises under the default provisions of the lease. *Id.* at 247.   The *General Times* Court noted that the Eleventh Circuit has determined that forbearance, or the act of refraining from enforcing a right, obligation, or debt by a creditor, cannot be treated as "new value" under § 547. *Id. citing Am. Bank of Martin County v. Leasing Serv. Corp (In re Air Conditioning, Inc.)*, 845 F.2d 293, 298 (11th Cir. 1988); *see also In re RDM Sports Group, Inc*. 250 B.R. 805 (Bankr. N.D. Ga. 2000).  The *General Times* Court found that the "new value" that was created was the tenant's right to continue a leasehold estate on the premises in exchange for the payment of the rent.  *General Times*, 328 B.R. at 248.  The rationale

7

is that an unexpired lease on real property is treated as an executory contract under 11 U.S.C. § 365, and therefore as each month comes up under the lease the lessee becomes obligated anew for that individual month's rent. *See Clothes, Inc.*, 35 B.R. at 491. In return, the lessor becomes obligated to provide the lessee with the leasehold for that month. *Id.* Therefore, the payment of current rent is premised upon current consideration and is therefore an exchange of "new value" between the parties. *Id., see also In re Mindy's Inc.,* 17 B.R. at 178-9. The Court is persuaded by this line of cases which hold that in landlord/tenant matters "new value" may be created as a result of the tenant's payment of required rent.

The Trustee argues that because the Debtor was not utilizing the full amount of the space it had available pursuant to the Lease, and because there is a question of fact regarding whether Debtor was conducting business in February, the Court should find that no "new value" was created because the estate did not receive a pecuniary benefit by Karbank allowing Debtor to remain on the premises. The Court disagrees with this analysis. The factual record supports Karbank's assertion that the Debtor was conducting business until February 29, 2008 and after that date it began preparation for liquidation.[10] With regard to the spacial argument, the fact that the Debtor chose not to occupy the entire premises that it was entitled to under the Lease does not alter § 547(c)(1) analysis.

Regarding the February Rent in this case, there is no dispute between the parties that the amount transferred to Karbank was for rent due pursuant to an unexpired Lease. The funds transferred on February 25, 2008 were in exchange for Debtor's right to continue its occupancy of the Property throughout February. There is also no dispute that Debtor continued to occupy the

---

[10] Trustee's Exhibit No. 4, ¶'s 12-14.

Property throughout the month of February and, therefore the Court finds that the "new value" that was created by Debtor's transfer of the February Rent was Debtor's right to continue its leasehold on the Property in exchange for the transfer of the February Rent.

The next question under § 547(c)(1) is whether Debtor and Karbank intended the exchange of "new value" to be contemporaneous. "When addressing whether parties intend for an exchange to be contemporaneous, courts consider whether the evidence shows a manifestation of desire between the parties that the exchange be a contemporaneous grant of money or money's worth in goods, services, credit, or property to the debtor." *Everlock Fastening Systems, Inc. v. Health Alliance Plan (In re Everlock Fastening Systems, Inc.),* 171 B.R. 251, 255 (Bankr. E.D. Mich. 1994). As in *General Times*, absent any evidence to the contrary, the evidence that the February Rent was equal to the amount owed for monthly rent establishes that the parties intended the nature of the transaction to be a contemporaneous exchange of rental payment for continuation of possession of the leasehold estate by Debtor.

Finally, to establish the affirmative defense under § 547(c)(1) the Court must determine whether the exchange of "new value" was in fact "substantially contemporaneous." There is no bright line rule in landlord/tenant cases for how many days into a month the rent is paid constitutes "substantially contemporaneous," however, the courts have developed some general guidelines for making this determination. Courts generally agree that rent payments made a few days after the first of the month are contemporaneous exchanges for the purpose of satisfying the "new value" exception under § 547(c)(1) since the statue only requires that the payments be "substantially" contemporaneous and not contemporaneous. *See Clothes*, *Inc*. 35 B.R. at 491 (holding that a rent payment made 15 days late was "substantially contemporaneous"). Some

9

courts have extended the definition of "substantially contemporaneous" to include any late rental payment so long as it is made in the same month the rent is due. *See Everlock Fastening*, 171 B.R. at 251; *Coco,* 67 at 365 ; *Mindy's Inc.,* 17 B.R. at 177. The rationale that these Courts adopted was that under § 365, rental obligations mature on a monthly basis during the course of the lease. *Mindy's Inc*., 17 B.R. at 177. "Therefore, a 'substantially contemporaneous' exchange exists because payments on the current monthly rent are payments for the continuation of the leasehold estate by the lessee for that month regardless of when they are paid during the month." *Id.* In *General Times*, the rent payment was paid on the 29th day of the month in which it was due and the Court held that it was "substantially contemporaneous." *General Times*, 328 B.R. at 250.

In this case, the February Rent was paid on the 25th day of the month in which it was due. The record supports the fact that the parties intended that the transfer be contemporaneous and the Court is persuaded that in landlord/tenant matters involving real property, where an unexpired lease is at issue, the "new value" that is created by the payment of rent is the tenant's right to continue the leasehold estate in exchange for the rent. For all of these reasons, the Court finds that, although the February Rent is avoidable under § 547(b), it is excepted under § 547(c)(1) and Karbank shall have summary judgment as to this transfer.

With regard to the Late Fees Payment and the March Rent, the Court finds that the Trustee has established that said transfers were preferential under § 547(b). However, the Court also finds that there remain genuine issues of material facts as to whether one or both of these transfers fall within the scope of § 547(c)(1). The Trustee argues that the Debtor made the Late Fees Payment and the March Rent pursuant to the Stipulation that resolved the Petition that Karbank filed in the State Court Action. Karbank disputes this assertion. The Affidavit submitted by the

Trustee as Exhibit No. 4 states that the Debtor paid the Late Fees Payment and the March Rent "as a result and pursuant to" the Stipulation, however, the Stipulation does not even refer to these transfers. This dispute creates a genuine issue of material fact for trial. Karbank argues that the Debtor paid the Late Fees Payment and the March Rent within the month that they were due, pursuant to an unexpired Lease and they should be considered "new value" under the *General Times* analysis. The Trustee argues that the Debtor did not pay the March Rent in order to remain in possession of the leasehold, because the Debtor had already been locked out pursuant to the default terms of the Lease prior to the transfers being made. According to the Trustee, the only reason the Debtor was allowed back in the premises was because it made the two transfers so that it could re-enter the property for six days and conduct the Liquidation Sale. Additionally, the Court notes that at least the February portion of the Late Fees Payment, or $3,848.72, was not paid within the month that it was due which weakens Karbank's § 547(c)(1) argument.

The Court finds that there remain genuine issues of material fact regarding the circumstances under which the Debtor made the Late Fees Payment and the March Rent which make these two transfers inappropriate for disposition on summary judgment.

### D. Transfers Made in the Ordinary Course of Business 11 U.S.C. § 547(c)(2)

Karbank asserts a second affirmative defense to the preferential transfers under 11 U.S.C. § 547(c)(2) which provides: "The trustee may not avoid under this section a transfer . . . (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee and such transfer was--(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms . . . ." Karbank has the burden of proof of establishing that

the transfers were made in the ordinary course of business under § 547(c)(2).  *In re Accessair, Inc.*, 314 B.R. 386 (B.A.P. 8th Cir. 2004).

Although there appears to be no real dispute on the issue, the Trustee is correct that Karbank failed to establish that the three transfers were made as payments of a debt incurred in the ordinary course of business of the Debtor and Karbank.  In order to prevail on summary judgment, Karbank needed also to provide factual evidence that the transfers were paid in the ordinary course of business as between Debtor and Karbank or in the ordinary course of the commercial real estate industry.  It did neither.  To make the determination as to whether the transfers were in the ordinary course between the Debtor and Karbank, the Court must engage in a "peculiarly factual analysis."  *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir. 1991).  This requires the Court to look at the "consistency of the transaction in question as compared to other, prior transactions between the parties."  *Concast Canada, Inc. v. Laclede Steel Co. (In re Laclede Steel Co.)*, 271 B.R. 127, 131 (B.A.P. 8th Cir. 2002).  In conducting this analysis, the Court should consider:

> (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of the tender differed from past practices; (3) whether the creditor of the debtor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*Concast*, 271 B.R. at n.3.  In the Eighth Circuit, the timing of payments is the most important factor to consider.  *Lovett*, 931, F.2d at 498.

The evidence before the Court regarding the transactions between the Debtor and Karbank includes an admission by Karbank that the February Rent was the first late payment that it had

received and a conclusory statement that it is not uncommon in any industry that executes leases for rent to be paid untimely. There is no factual evidence to establish that as between Debtor and Karbank, or within the commercial real estate industry, that paying rent up to 25 days late is considered within the ordinary course of business. Karbank cites *In re Garrett Tool & Engineering, Inc.*, 273 B.R. 123 (Bankr. E.D. Mich. 2002) for the proposition that paying rent due under any kind of lease is a payment made in the ordinary course of business. Karbank further states that under *Garrett*, no analysis of when or under what circumstances payment of rent was made is needed, so long as it was made pursuant to a lease. Karbank's interpretation of the *Garrett* opinion is simply wrong. While paying rent, current or past due, may be one of the factors that the *Garrett* Court considered, it is not the only factor. Even if the *Garrett* opinion did stand for such an aberrant proposition, this Court would not be persuaded to follow it.

In this case, the evidence in the record supports a finding that the Late Fees Payment and the March Rent were paid outside the ordinary course of business. The March Rent was made 26 days late, it was made after two demands letters had been mailed to the Debtor, after a Petition for Writ of Attachment and for Breach and Repudiation of Lease had been filed and after the parties had stipulated to an agreement regarding the Debtor's re-entry onto the premises for a Liquidation Sale. *See In re Spirit Holding Co., Inc.*, 153 F.3d 902, 905 (8th Cir. 1998) (noting that unusual collection practices are grounds to determine that payment was not in the ordinary course). Additionally, there remains a genuine issue of fact regarding whether Debtor was even conducting business in the month of March such that the two transfers in that month could even be considered to have been made in the ordinary course of business or any business at all other than winding up. The allegation that all Debtor did in March was prepare for and conduct a

Liquidation Sale tends to support a conclusion that the transfers were not made in the ordinary course.

Because the Court finds that § 547(c)(1) renders the February Rent non-avoidable, it is not necessary to determine whether it is also excepted under the ordinary course defense.

### E. The Common Fund Doctrine

In its cross-motion for summary judgment, Karbank asserts a right to recover attorney's fees under the "common fund doctrine." Missouri courts adhere to the "American rule" which states that, ordinarily, litigants must bear the expense of their own attorney's fees. *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo. Ct. App. 1993). The common fund doctrine is an exception to the "American rule" and permits litigants to be "reimbursed when ordered by a court of equity [in order] to balance benefits." *Feinberg v. Adolph K Feinberg Hotel Trust,* 922 S.W.2d 21, 26 (Mo. Ct. App. 1996). This exception incorporates two related doctrines. First, it incorporates the common fund doctrine which was implicitly adopted when the Missouri Supreme Court permitted a trial court to require non-litigants to contribute their proportionate part of counsel fees when a litigant successfully created, increased, or preserved a fund in which the non-litigants were entitled to share. *Feinberg*, 922 S.W. 2d at 26; *see also Jesser v. Mayfair Hotel, Inc*., 360 S.W.2d 652 (Mo. Banc 1962) *citing Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 936 (Mo. Banc 1960). The court stated, "the equitable way to apportion the expenses of counsel fees is to allow them against the fund." *Jesser*, 360 S.W.2d at 652. Second, it incorporates the "Murray doctrine" which has been utilized by the courts when successful litigation has benefitted the estate as a whole rather than just to certain interested individuals. *See In re Estate of Chrisman*, 723 S.W.2d 484, 487 (Mo. App. 1986). It is the common fund doctrine that Karbank seeks to apply in

14

this case.

As recited previously in this Opinion, after the Debtor failed to pay Karbank the March rent when it came due, on March 24, 2008, Karbank filed the State Court Action and obtained a Writ of Attachment against Debtor's personal property.[11] Karbank and Debtor negotiated the Stipulation and Debtor proceeded with the Liquidation Sale. The net proceeds from the Liquidation Sale in the amount of $252,430.02 ("Net Liquidation Proceeds") were paid into the registry of the Jackson County Court in connection with the State Court Action and in accordance with the Stipulation. Thereafter, the Net Liquidation Proceeds were transferred to the Trustee pursuant to an Agreed Order due to the filing of the involuntary bankruptcy and the stay of all proceedings in the state court. It is from this "common fund" that Karbank seeks to obtain its attorney's fees in the amount of $22,919.19.

Karbank argues that the "common fund" was created as a result of: (1) its agreement to release its attachment lien against Debtor's personal property, (2) its agreement to forbear its right to reclaim possession of the Property, (3) its agreement to allow Debtor to proceed with the Liquidation Sale, and (4) its agreement to pay the Net Liquidation Proceeds into the registry of the Jackson County Court. Karbank claims that this fund resulted solely through its efforts and was created with the intent of benefitting other creditors along with itself. Accordingly, Karbank seeks to utilize the common fund doctrine in aid of recovery of its attorney fees.

The Trustee argues that Karbank's actions, in filing the Writ and negotiating the Stipulation, were not for the benefit of any other creditor but itself. The Trustee asserts that the release of the attachment lien and the subsequent transfer of the monies into the bankruptcy estate

---

[11] Trustee's Exhibit No. 9.

15

were the product of negotiations with Debtor's counsel, not Karbank's efforts to create, increase or preserve the proceeds for the benefit of all of Debtor's creditors. Has it not been for Debtor's counsel and the filing of the involuntary bankruptcy petition, because Karbank's damages are greater than the amount of the Net Proceeds, all of the sale proceeds would have gone to Karbank. Lastly, the Trustee argues that Karbank failed to establish that there is a certified class of claimants or creditors or that if there were, that they have mathematically ascertainable claims to the fund.

The Court finds that Karbank did not create the fund from which it now seeks to extract its attorney's fees. The Debtor created the fund by conducting the Liquidation Sale. Karbank admits this in its own argument for cross-summary judgment when it says that it had a hand in shortening the time frame of the State Court Action so that the Debtor could "proceed with an auction it had already advertised and wanted to conduct ...."[12] Karbank may, however, have an argument that it preserved a common fund for the benefit of the unsecured creditors. In common fund cases, parties are entitled to recover attorneys's fees for only those activities conducted to benefit the fund, and services which do not benefit the fund are not recoverable. *Knopke v. Knopke*, 837 S.W.2d 907, 922 (Mo. Ct. App. 1992) *citing Leggett*, 342 S.W. 2d at 936. In order to determine which of Karbank's actions preserved or benefitted the fund, Karbank needed to provide the Court with billing statements, detailed enough to establish the extent and reasonableness of its preservation of the fund, which it failed to do. The time entries that Karbank provided the Court are not sufficiently detailed to permit a determination regarding which tasks were done in an effort to preserve the common fund as opposed to the tasks that were done solely to benefit

---

[12] Karbank's Reply Brief in Support of its Cross-Motion for Summary Judgment, p. 9.

Karbank's other legal interests.[13] Due to the manner in which the tasks are blocked together with no time entries allocated to each task, only a sum total for all hours spent on the various tasks completed, there is no way for the Court to make a finding regarding whether the time spent on each individual task related to preserving the common fund and was reasonable. Because there remain genuine issues of fact regarding the amount and reasonableness of attorney's fees generated by Karbank to preserve or benefit the common fund for the unsecured creditors, this matter will also be set for trial.

### III. CONCLUSION AND ORDER

For the reasons stated above, the Trustee's motion for summary judgment is hereby granted in part and denied in part. The Court hereby grants the Trustee partial summary judgment as to Count I, II and III of the Complaint and declares each of the transfers avoidable pursuant to 11 U.S.C. § 547(b). The Court denies the Trustee summary judgment as to Count IV of the Complaint as none of the transfers are recoverable on summary judgment. The Court grants Karbank summary judgment on Count I as to the February Rent under 11 U.S.C. § 547(c)(1). The Court denies summary judgment to Karbank on Count II as to the Late Fees Payment and on Count III as to the March Rent as there remain genuine issues of material fact which must be resolved at trial. The Court also denies summary judgment to Karbank on the common fund matter. This Memorandum

---

[13] Karbank filed proof of claim no. 126 in paper form. Attached to the claim are Exhibits A and B, which are Karbank's attorney's fees statements. When the claim was entered into ECF, the exhibits were not included. Because they are not referenced in summary form or included in the ECF filing, the Court initially questioned whether they are a part of the record for purposes of this summary judgment motion. The Court has determined that the Court's paper file includes a file stamped copy of the claim and Exhibits A and B and the Trustee's Exhibit No. 16 to the summary judgment motion refers to proof of claim no. 126, which in its paper form includes Exhibits A and B, therefore, the exhibits are deemed part of the record. Despite the confusion, there appears to be no dispute that Exhibits A and B constitute the basis of Karbank's claim for attorney's fees, therefore, the Court has reviewed them.

Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 18th day of February 2011.

/s/ Dennis R. Dow<br>United States Bankruptcy Judge

Copies to:
T. Bradley Manson
P. Glen Smith